IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | **CRIMINAL NO. JKB-21-0458** |
| **ELIAS NICK COSTIANES, JR.,** | * | |
| **Defendant.** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Currently pending before the Court is Defendant Elias Costianes' Motion to Dismiss, which seeks to dismiss Count Nine of the Superseding Indictment. (ECF No. 66.) Count Nine of the Superseding Indictment charges Defendant with possession of a firearm and ammunition by an unlawful user of or addict to any controlled substance in violation of 18 U.S.C. § 922(g)(3). (ECF No. 34.) Section 922(g)(3) makes it unlawful for any person "who is an unlawful user of or addicted to any controlled substance" "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." Defendant argues that Count Nine should be dismissed for two reasons: (1) § 922(g)(3) is unconstitutionally vague and (2) § 922(g)(3) is unconstitutional following the Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111 (2022). (*See generally* ECF No. 66.) For the reasons below, the Court will deny Defendant's Motion.

**I.     Vagueness Challenge**

Defendant first argues that 18 U.S.C. § 922(g)(3) is void for vagueness. (*See* ECF No. 66 at 2–5.) The Fourth Circuit has long held that "[i]n criminal cases . . . 'if a law clearly prohibits a

defendant's conduct, the defendant cannot challenge, and a court cannot examine, whether the law may be vague for other hypothetical defendants.'" *United States v. Hasson*, 26 F.4th 610, 616–17 (4th Cir.) (quoting *United States v. Hosford*, 843 F.3d 161, 170 (4th Cir. 2016)), *cert. denied*, 143 S. Ct. 310 (2022). With respect to § 922(g)(3), the Fourth Circuit has explained that, "[t]o sustain a conviction, the government must prove that the defendant's drug use was 'sufficiently consistent, prolonged, and close in time to his gun possession to put him on notice that he qualified as an unlawful user' under the terms of the statute." *United States v. Sperling*, 400 F. App'x 765, 767 (4th Cir. 2010) (quoting *United States v. Purdy*, 264 F.3d 809, 812 (9th Cir. 2001)).

Defendant argues that § 922(g)(3) is vague on its face. He cites *Johnson v. United States*, 576 U.S. 591 (2015) for the proposition that "[t]he fact that the law may be applied to some possible conduct does not mean that a law cannot be found unconstitutional on its face." (ECF No. 66 at 3.) He asserts that "[t]herefore, the Defendant does not have to show that the statute is vague as applied to his case for this Court to entertain a facial challenge." (*Id.*)

However, the Fourth Circuit recently rejected this very argument. In a case challenging the same statutory provision at issue here—§ 922(g)(3)—the Fourth Circuit "conclude[d] that *Johnson* and [*Sessions v. Dimaya*, 138 S. Ct. 1204 (2018)] 'did not alter the general rule that a defendant whose conduct is clearly prohibited by a statute cannot be the one to make a facial vagueness challenge.'" *Hasson*, 26 F.4th at 620–21 (4th Cir. 2022) (quoting *United States v. Cook*, 970 F.3d 866, 877 (7th Cir. 2020)). In *Hasson*, the defendant "d[id] not dispute the district court's holding that his conduct f[ell] squarely within the confines of Section 922(g)(3)." *Id.* at 616 (alterations, quotations, and citations omitted). The Fourth Circuit concluded that such "abandonment doom[ed] [the defendant's] vagueness challenge[,]" explaining that:

> The Supreme Court and this Court have repeatedly held that we must "consider whether a statute is vague *as applied to the particular facts at issue*, for '[a] plaintiff

2

who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'"

*Id.* (emphasis added) (quoting *Holder v. Humanitarian L. Project*, 561 U.S. 1, 18–19 (2010)).

Here, Defendant does not argue that the statute is vague as applied to the particular facts of his case. Rather, as noted above, he argues that the statute is vague on its face and that he "does not have to show that the statute is vague as applied to his case[.]" (ECF No. 66 at 3.) *Hasson* forecloses this argument. Accordingly, the Motion will be denied on this basis.

Further, because the question of whether Defendant's conduct is "clearly proscribed" by § 922(g)(3) ultimately depends on the evidence the Government will present at trial, several courts have held that this type of pre-trial vagueness challenge is premature. *See, e.g.*, *United States v. Turner*, 842 F.3d 602, 605 (8th Cir. 2016) (holding that "the district court could not rule on [the defendant's] as applied constitutional challenge without resolving factual issues related to his alleged offense, such as the extent of his drug use, and therefore the court should have deferred ruling until trial"); *United States v. Van Jackson*, Crim. No. 18-15-AT-JKL-3, 2018 WL 6421882, at *3 (N.D. Ga. Sept. 5, 2018) (collecting cases and explaining that "courts across the country have held that resolution of a pretrial void-for-vagueness challenge[] to § 922(g)(3) should be deferred until trial"), *report and recommendation adopted*, Crim. No. 18-0015-AT-3, 2018 WL 6415044 (N.D. Ga. Dec. 6, 2018).[1] Therefore, although the Motion should be denied pursuant to *Hasson* because the Defendant does not argue that the law is vague as applied to the facts of his case, to the extent that Defendant sought to so argue, a final determination of that issue is premature.

---

[1] This conclusion comports with Federal Rule of Criminal Procedure 12(b)(3), which permits criminal defendants to "raise by pretrial motion any defense, objection, or request *that the court can determine without a trial on the merits*." (emphasis added). Here, whether § 922(g)(3) is vague as applied to the Defendant would depend on facts that will presumably be developed at trial. *See United States v. Odom*, 721 F. App'x 254, 255 (4th Cir. 2018) ("A district court may dismiss an indictment under Rule 12 where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." (citation and quotations omitted)).

3

## II. *Bruen* Challenge

Defendant next argues that § 922(g)(3) "is not consistent with the text, history, and tradition of firearm regulation in the United States and, consequently, falls under *Bruen*." (ECF No. 66 at 6.) Defendant's *Bruen* challenge fails and the Motion will be denied.

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. CONST. amend. II. In *District of Columbia v. Heller*, the Supreme Court discussed the "individual right to keep and bear arms" but recognized that "[l]ike most rights, the right secured by the Second Amendment is not unlimited." 554 U.S. 570, 595, 626 (2008). The Court explained that the Second Amendment, "surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home," but noted that "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." *Id.* at 626, 635.

After *Heller* and prior to the recent *Bruen* decision, federal courts analyzed firearms laws using a means-end analysis to determine whether the government interest in the regulation was sufficient to overcome the burden the law placed on one's Second Amendment right. *See, e.g., United States v. Carter*, 669 F.3d 411, 416 (4th Cir. 2012) (describing the two part test to evaluate statutes under the Second Amendment: (1) "we inquire whether the statute in question imposes a burden on conduct falling within the scope of the Second Amendment's guarantee" and (2) "if the statute burdens such protected conduct, we apply an appropriate form of means-end scrutiny" (citation and quotations omitted)).

In *Bruen*, the Supreme Court rejected this means-end analysis, and provided the following methodology for reviewing Second Amendment challenges:

4

> In keeping with *Heller*, we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation. Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 142 S. Ct. at 2126 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50, n. 10 (1961)).

Thus, courts apply a two-prong test pursuant to *Bruen*. As Judge Hollander recently explained:

> A court must first determine whether "the Second Amendment's plain text covers an individual's conduct." *Bruen*, 142 S. Ct. at 2126. If it does not, the analysis ends, and the government's regulation is valid. However, if the conduct at issue is covered by the Amendment's text, the conduct is presumed protected, and the government must then demonstrate that the regulation "is consistent with this Nation's historical tradition of firearm regulation." *Id.* at 2130. Only if a firearm regulation is consistent with this Nation's historical tradition[] may a court conclude that the individual's conduct falls outside the protection of the Second Amendment. *Id.*

*United States v. Jackson*, Crim. No. ELH-22-141, 2023 WL 2242873, at *4 (D. Md. Feb. 27, 2023).

The Government explains that "[i]n much post-*Bruen* litigation, the government has taken the position that defendants who are similarly situated to this Defendant cannot satisfy the first step of the *Bruen* test because they are not 'law abiding' citizens to whom Second Amendment rights are afforded." (ECF No. 67 at 8.) The Government argues that, even assuming that Defendant is "potentially entitled to Second Amendment protections" (i.e., even if the challenge survives the first step of the *Bruen* analysis), "the Defendant's motion fails at the second step of the *Bruen* analysis and should, therefore, be denied." (*Id.* at 9.) The Court agrees.

### A. *Bruen* Step One

With respect to the first step of the analysis, whether the plain text of the Second Amendment covers the conduct issue, "the Court must determine whether Defendant, presumed for this motion to be an unlawful drug user as prohibited under § 922(g)(3), is among those

5

protected by the Second Amendment." *United States v. Posey*, Crim. No. 2:22-83 JD, 2023 WL 1869095, at *5 (N.D. Ind. Feb. 9, 2023). Defendant does not address the first step of the *Bruen* analysis, arguing only that § 922(g)(3) "is not consistent with the text, history, and tradition of firearm regulation in the United States." (ECF No. 66 at 6.) The Government likewise focuses its briefing on the second prong of the *Bruen* analysis. (ECF No. 67 at 8–20.)

Courts are divided on "whether the Second Amendment protects the right to bear arms for all, or rather, only the rights of law-abiding citizens." *United States v. Black*, Crim. No. 22-133-01, 2023 WL 122920, at *3 (W.D. La. Jan. 6, 2023); *compare id.* at *4 ("The majority of courts have concluded that the right extends only to law-abiding citizens."), *with United States v. Le*, No. 423-00014-SHL-HCA, 2023 WL 3016297, at *4 (S.D. Iowa Apr. 11, 2023) ("Of the courts to have decided the issue directly, most appear to have concluded that 'the people' in the Second Amendment refers to all citizens, and thus any citizen who possesses a firearm of a type in common use has satisfied *Bruen*'s first step.").

The Court agrees with those courts that have concluded that the Second Amendment only covers "law abiding" citizens. Indeed, in *Heller*, the Supreme Court explained that the Second Amendment "elevates above all other interests the right of *law-abiding, responsible citizens* to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635 (emphasis added). Likewise, the Supreme Court in *Bruen* described the right conferred by the Second Amendment as one belonging to "law-abiding citizens." *See, e.g., Bruen*, 142 S. Ct. at 2134 ("It is undisputed that petitioners Koch and Nash—two ordinary, law-abiding, adult citizens—are part of 'the people' whom the Second Amendment protects."); *Posey*, 2023 WL 1869095, at *6 n.5 ("*Bruen* used the phrase 'law-abiding citizen' no fewer than fourteen times in describing the scope of the Second Amendment right."); *see also Jackson*, 2023 WL 2242873, at *5–6 (explaining that *Heller*, *Bruen*, and Fourth

6

Circuit precedent describe rights under the Second Amendment as extending only to law-abiding citizens).

Further, the Court agrees with those courts that have concluded that conduct prohibited by § 922(g)(3) is not covered by the plain text of the Second Amendment because it only limits firearm possession for individuals engaged in unlawful conduct. *See, e.g., United States v. Sanchez*, Crim. No. W-21-00213-ADA, 2022 WL 17815116, at *3 (W.D. Tex. Dec. 19, 2022) (finding that "Defendant's conduct as a user of unlawful drugs under Section 922(g)(3) is not covered by the plain text of the Second Amendment" and that "the language of Section 922(g)(3) limits only persons that are not law-abiding from obtaining firearms and thus does not cover conduct protected by the Second Amendment"); *United States v. Randall*, Crim. No. 422-00099-SMR-HCA-3, 2023 WL 3171609, at *3 (S.D. Iowa Feb. 14, 2023) (concluding that "individuals who are not law-abiding are not entitled to the Second Amendment's protection" and that "18 U.S.C. § 922(g)(3) criminalizes conduct not protected by the Second Amendment").

However, the Court need not definitively resolve this question here, as an analysis under the second prong of *Bruen* confirms that § 922(g)(3) is constitutional.

### B. *Bruen* Step Two

The Court finds that the Government has met its burden of demonstrating that § 922(g)(3) is consistent with this country's historical tradition of firearm regulation. As the Supreme Court explained, "th[e] historical inquiry that courts must conduct will often involve reasoning by analogy" and "determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Bruen*, 142 S. Ct. at 2132. The Court did not provide an "exhaustive survey of the features that render regulations relevantly similar" but identified "two metrics: how and why the

7

regulations burden a law-abiding citizen's right to armed self-defense." *Id.*

The Government has pointed to the "broad tradition" of "limiting guns to responsible, law-abiding, mentally competent citizens" and to "restrictions against felons, the mentally ill, and the intoxicated." (ECF No. 67 at 11.) For instance, the Government points to *Heller*'s discussion of the longstanding prohibitions on the possession of firearms by felons and the mentally ill. (*Id.* at 11–12 (*citing Heller*, 554 U.S. at 626)); *see also United States v. Daniels*, 610 F. Supp. 3d 892, 895 (S.D. Miss. 2022) (explaining that "*Heller* explicitly cautioned readers not to 'doubt . . . longstanding prohibitions on the possession of firearms by felons and the mentally ill.'" (quoting *Heller*, 554 U.S. at 626)). The Government also points to "state laws [that] have also historically prohibited carrying a firearm while under the influence of alcohol." (ECF No. 67 at 13); *see also Posey*, 2023 WL 1869095, at *8 (citing to historical statutes restricting gun possession by the intoxicated and finding that "these additional historical examples, of statutes regulating firearm possession and use by individuals using intoxicating substances" reflects the historical support for § 922(g)(3)). The Government explains that "the justification for all three prohibitions has historically been the same: felons, the mentally ill, and the intoxicated are presumptively risky persons who pose a danger to public safety if armed." (ECF No. 67 at 13.)

The Government has shown that § 922(g)(3) is "relevantly similar" to historical regulations aimed at preventing potentially dangerous persons from possessing and using firearms, such as individuals convicted of felonies, individuals suffering from mental illness, and intoxicated individuals. The Government has shown that § 922(g)(3) meets the "two metrics" identified by the Court in *Bruen*. As the Government argues, "the [historical] restrictions impose a comparable burden: they categorically prohibit certain persons from possessing firearms" and "they all proceed under a comparable justification: they protect public safety by keeping guns out of the hands of

presumptively dangerous persons, namely, lawbreakers and persons with impaired judgment or mental ability." (ECF No. 67 at 14.)

In reaching its conclusion that the Government has met its burden, the Court finds persuasive and agrees with the discussion of the historical tradition of firearm regulation in various district court cases that have found § 922(g)(3) constitutional post-*Bruen*. For example, a district court in the Northern District of Indiana concluded that:

> The historical record shows a tradition of regulating firearm possession by individuals using intoxicating substances which is analogous to § 922(g)(3). Therefore, the Court finds that Government has met its burden and concludes that § 922(g)(3) is constitutional. In the alternative, the Court would also uphold § 922(g)(3) as it is analogous to historical regulations preventing dangerous persons, such as felons and the mentally ill, from possessing firearms.

*Posey*, 2023 WL 1869095, at *9; *see also Daniels*, 610 F. Supp. 3d at 895–97 (finding § 922(g)(3) consistent with historical firearms regulation in the United States); *United States v. Seiwert*, Crim. No. 20-443, 2022 WL 4534605, at *2 (N.D. Ill. Sept. 28, 2022) ("§ 922(g)(3) is relevantly similar to regulations aimed at preventing dangerous or untrustworthy persons from possessing and using firearms, such as individuals convicted of felonies or suffering from mental illness"); *Randall*, 2023 WL 3171609, at *3 ("The historical analogues to 18 U.S.C. § 922(g)(3), in the form of laws that prohibited possession of firearms by felons and alcoholics, are sufficient to justify the law under *Bruen*."); *United States v. Lewis*, Crim. No. 22-368-F, 2023 WL 187582, at *4 (W.D. Okla. Jan. 13, 2023) ("The court concludes that § 922(g)(3) is relevantly similar to regulations aimed at preventing dangerous or untrustworthy persons from possessing and using firearms, such as individuals convicted of felonies or suffering from mental illness, or individuals who are intoxicated." (citations and quotations omitted).)

Further, although it was decided prior to *Bruen*, the Court, like other district courts, also finds persuasive the historical analysis in *United States v. Yancey*, 621 F.3d 681, 686 (7th Cir.

9

2010). *See Daniels*, 610 F. Supp. 3d at 897 (observing "that the analysis in *Yancey* demonstrates the historical attestation demanded by the *Bruen* framework"); *see also Posey*, 2023 WL 1869095, at *8 ("*Yancey*'s historical analysis, of state law disarming alcoholics and habitual drug users, at the first step of the old test was recognized as 'broadly consistent with *Heller*' and remains valid." (citing *Bruen*, 142 S. Ct. at 2127–29).) In that case, the Seventh Circuit analyzed the historical underpinnings of § 922(g)(3), and explained that "[k]eeping guns away from habitual drug abusers is analogous to disarming felons"; that "most scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm unvirtuous citizens"; and that "habitual drug abusers, like the mentally ill, are more likely to have difficulty exercising self-control, making it dangerous for them to possess deadly firearms." *Yancey*, 621 F.3d at 683–87.

Accordingly, the Court finds that Defendant's *Bruen* challenge fails. In so concluding, the Court joins the majority of courts that have held § 922(g)(3) constitutional in the wake of *Bruen*.[2]

### III. Conclusion

For the foregoing reasons, Defendant's Motion (ECF No. 66) will be denied.

---

[2] *Compare Daniels*, 610 F. Supp. 3d 892 (holding § 922(g)(3) constitutional after *Bruen*); *Posey*, 2023 WL 1869095 (same); *Seiwert*, 2022 WL 4534605 (same); *Le*, 2023 WL 3016297 (same); *Randall*, 2023 WL 3171609 (same); *Black*, 2023 WL 122920 (same); *Sanchez*, 2022 WL 17815116 (same); *Gilpin v. United States*, Crim. No. 20-04050-01-C-RK, 2023 WL 387049 (W.D. Mo. Jan. 3, 2023) (same); *United States v. Stennerson*, Crim. No. 22-139-BLG-SPW, 2023 WL 2214351 (D. Mont. Feb. 24, 2023) (same); *United States v. Harper*, Crim. No. 21-4085-LTS-KEM, 2022 WL 8288406 (N.D. Iowa Sept. 9, 2022) (same), *report and recommendation adopted*, Crim. No. 21-4085-LTS, 2022 WL 4595060 (N.D. Iowa Sept. 30, 2022); *Lewis*, 2023 WL 187582 (same), with *United States v. Connelly*, Crim. No. EP-22-229(2)-KC, 2023 WL 2806324 (W.D. Tex. Apr. 6, 2023) (finding § 922(g)(3) unconstitutional after *Bruen*); *United States v. Harrison*, Crim. No. 22-00328-PRW, 2023 WL 1771138 (W.D. Okla. Feb. 3, 2023) (same).


DATED this __18__ day of May, 2023.

BY THE COURT:

_____
James K. Bredar
Chief Judge