**OFFICE OF THE FEDERAL PUBLIC DEFENDER**
**DISTRICT OF MARYLAND**
NORTHERN DIVISION
TOWER II, 9th FLOOR
100 SOUTH CHARLES STREET
BALTIMORE, MARYLAND 21201-2705
TEL: (410) 962-3962
FAX: (410) 962-3976
EMAIL: Andrew_Szekely@fd.org

JAMES WYDA
FEDERAL PUBLIC DEFENDER

ANDREW SZEKELY
SUPERVISORY ASSISTANT FEDERAL PUBLIC DEFENDER

**Under Seal**

September 13, 2024

The Honorable James K. Bredar
Senior United States District Judge
United States District Court
 for the District of Maryland
101 W. Lombard Street
Baltimore, MD 21201
Via CM/ECF

　　　　**Re:**　　*United States v. Elias Costianes*, JKB-21-0458

Dear Judge Bredar:

We write in advance of Mr. Costianes' September 24, 2024, sentencing. On that day, the Court should impose a sentence of probation. Probation is reasonable because of Mr. Costianes' decision to address his mental illness ███████████████ his significant caregiving responsibilities for his disabled sister ███ and his flawless record on pretrial release for over three years. Any sentence other than probation would violate 18 U.S.C. § 3553(a)'s parsimony clause and would be unreasonable.

## I.　　Procedural History

Mr. Costianes made his initial appearance for this matter on September 1, 2021, and was released the same day on pretrial supervision. *See* Release Order, ECF No. 11. On June 9, 2023, pursuant to a plea agreement, Mr. Costianes pled guilty to one count of possession of a firearm by an unlawful user of a controlled substance in violation of 18 U.S.C. § 922(g)(3). *See* Plea Agreement, ECF No. 83. On September 25, 2023, the Court sentenced Mr. Costianes to 24 months' incarceration. Judgment and Commitment, ECF No. 94.

In between the sentencing and the date of his surrender to the Bureau of Prisons (BOP), on October 17, 2023, Mr. Costianes filed a *pro se* motion pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel. Specifically, Mr. Costianes's § 2255 petition alleged that prior counsel was ineffective in violation of the Sixth Amendment for failing to adequately

September 13, 2024
Page 2
*United States v. Elias Costianes*, JKB-21-458
Filed Under Seal

communicate and advise Mr. Costianes during plea negotiations and for failing to adequately present mitigating evidence—including the impact of a brain injury resulting from a 2020 car accident that affected his cognitive functioning and led to increased drug use and more—at sentencing. On December 13, 2023, the Court appointed the undersigned to represent Mr. Costianes. On May 30, 2024, the Court entered a consent order granting Mr. Costianes a new sentencing and deeming all other claims in the § 2255 withdrawn. Order, ECF No. 124.

## II.     The Plea Agreement and Presentence Report

Mr. Costianes' guilty plea was entered pursuant to a written plea agreement that included a stipulation as to the sentencing guidelines. *See* Plea Agreement at ¶ 6, ECF No. 83.

As to the offense of conviction, the parties agreed that a base offense level of 20 applies because Mr. Costianes possessed a semiautomatic firearm with an extended magazine and because he was prohibited from possessing firearms at the time of his offense. *Id.* At ¶ 6a, U.S.S.G. § 2K2.1(a)(4)(B). The parties further agreed that a 2-level increase applies because the offense involved between three and seven firearms. Plea agreement at ¶ 6b, U.S.S.G. § 2K2.1(b)(1)(A). The total for this offense is therefore an offense level of 22.

The parties also agreed to relevant conduct for conspiracy to distribute and possess with intent to distribute a controlled substance. For that offense, a base offense level of 14 applies and a 2-level increase also applies because a dangerous weapon was possessed. Plea agreement at ¶6c-e, U.S.S.G. § 2D1.1(b)(1) and (c)(12).

Mr. Costianes and the government further stipulated that the two offenses group such that the adjusted offense level is 22. *Id.* At ¶ 6f-h. The government has stated it agrees that Mr. Costianes should receive a 2-offense-level downward adjustment for his acceptance of responsibility, but that it will not move for a third level. *Id.*at ¶6(i) and U.S.S.G. § 3E1.1. The parties therefore agreed on a final offense level of 20.

Finally, the government agreed that it would not seek a sentence of more than 37 months' incarceration.[1]

The Presentence Report tracked the parties' stipulations as to the offense conduct but applied the grouping rules differently and found a total offense level of 21. PSR at ¶¶ 28-46. In its sentencing submission, the government noted the PSR's error. Government Sentencing Memo, ECF No. 89 at 2-3. During Mr. Costianes' first sentencing, the Court adopted the parties' view of the guidelines; Mr. Costianes asks the Court to do so again.

The PSR found that Mr. Costianes had no prior convictions, and he is therefore in criminal history category I.

---

[1] At Mr. Costianes' sentencing the government sought a sentence of 33 months' incarceration.

September 13, 2024
Page 3
*United States v. Elias Costianes*, JKB-21-458
Filed Under Seal

If the Court again adopts the parties' guidelines stipulation, the applicable advisory sentencing guidelines range would be 33 to 41 months' incarceration.

Mr. Costianes notes one additional correction to the PSR. In Paragraphs 91 and 92, the PSR states that Mr. Costianes is statutorily ineligible for a sentence of probation. That is incorrect. The sentence for a violation of 18 U.S.C. § 922(g) is found in 18 U.S.C. § 924(a)(8), which provides a maximum sentence, no minimum sentence, and no prohibition in imposing a probationary sentence. *Compare* 18 U.S.C. § 924(e) (providing a 15-year mandatory minimum sentence for violators of § 922(g) with certain prior convictions and expressly prohibiting probation).

### III.    A sentence of probation advances the sentencing goals of 18 U.S.C. § 3553(a)

Sentencing is a "unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States*, 518 U.S. 81 (1996). In Mr. Costianes' case, his failings are clear. But the Court cannot—and 18 U.S.C. § 3553(a) mandates it not—view the offense conduct in a vacuum. The statute, however, gives no guidance as to how to weigh each factor. Rather, the consideration of each factor and determining which factors are most important in a case is the heart of the individualized sentencing process. In this case, the sentencing factors focusing on public safety and Mr. Costianes' history and characteristics support a probationary sentence.

At Mr. Costianes' original sentencing, prior counsel relied on three main arguments: (1) Mr. Costianes' cessation of drug use after his arrest, (2) his care responsibilities for his sister ▓▓ and (3) a collection of character letters supporting Mr. Costianes. As to the first two arguments, below, Mr. Costianes provides context, more detail, and updated information. As to the letters, Mr. Costianes asks the Court to make them part of the record for this sentencing as well.

1.  **Mr. Costianes has gained insight into his past behavior and taken significant steps to address his underlying mental illness.**

Mr. Costianes' PSR refers to Mr. Costianes' drug use, a potential diagnosis for ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓, and a traumatic brain injury (TBI) Mr. Costianes received in 2020, but the neither the PSR nor prior counsel's arguments highlighted the interconnectedness of these three factors. Indeed, Mr. Costianes' multi-year drug addiction was the direct result of an undiagnosed mental illness and the after effects of his TBI.

As part of counsels' investigation into Mr. Costianes' § 2255 claims, we retained Dr. Jonathan DeRight, a board-certified licensed neuropsychologist to evaluate Mr. Costianes. *See* Dr. DeRight Report, Exhibit A and Dr. DeRight *curriculum vitae*, Exhibit B.

After reviewing records and conducting a multi-hour examination with Mr. Costianes, Dr. DeRight concluded:

September 13, 2024
Page 4
*United States v. Elias Costianes*, JKB-21-458
Filed Under Seal



Exhibit A at 1.

Regarding Mr. Costianes' substance abuse, Dr. DeRight continued:



*Id.*

Further, Dr. DeRight connected Mr. Costianes' 2020 TBI to both Mr. Costianes' drug use and his ███████████:



*Id.*

September 13, 2024
Page 5
*United States v. Elias Costianes*, JKB-21-458
Filed Under Seal

Dr. DeRight further noted that the symptoms supporting Mr. Costianes' diagnosis of ██████ ████ were not easy to detect, and therefore, went untreated until recently:



*Id.* at 12.

For treatment, Dr. DeRight recommended that Mr. Costianes consult with a psychiatrist and determine what ██████████████████ treatment would be appropriate. *Id.* at 11. In making the treatment recommendation, Dr. DeRight noted the importance of Mr. Costianes complying with a medication regimen and that █████████████████ ███████████████████████████████████████████." *Id.* at 12.

Mr. Costianes' mistrust of the medical system and specifically pharmaceuticals was a theme interwoven throughout Dr. DeRight's report. ███████████████████████████ ███████████████████████████████████████████ Further, the Court noted this issue during the first sentencing.

After the evaluation and a discussion of its results, Mr. Costianes faced a choice. He could follow through with Dr. DeRight's recommendations and begin treatment; or he could maintain his sobriety but not address the underlying issues that led to his self-medication. Mr. Costianes considered where his life had been not that many years ago compared to where he was now – the successful businessman versus the heavily indebted person he was now. He considered some of the poor choices he made in the past. And he considered his responsibilities towards his sister ████ After weighing those considerations, Mr. Costianes decided caring for himself and ███ took precedence over his reluctance to take psychiatric medication.

September 13, 2024
Page 6
*United States v. Elias Costianes*, JKB-21-458
Filed Under Seal

On June 6, 2024, Mr. Costianes went for an intake appointment at Harmony, a mental health services provider in Morgantown, West Virginia. *See* Exhibit C, Harmony Records.[2] His ███████████ ███████████████████ confirmed and he was prescribed ███████████████ *Id.* at 11. ███████████████████████████████████████████████████████████████████████ *Id.* at 11.

███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████ In other words, the medication is working as intended and Mr. Costianes has seen significant benefit.

2. **Mr. Costianes' role as the caretaker for his disabled sister supports a sentence of probation.**

As noted above, Mr. Costianes' care responsibilities for his sister ███ were a primary driver in his decision to start to take psychiatric medication. On December 23, 2021, after ███ diagnosis with ███████████████, Mr. Costianes took her into his home as she could no longer care for herself. From then until earlier this year, ███ lived with Mr. Costianes and he was her primary caretaker. Recently, Mr. Costianes and his other sisters decided that due to the uncertainty surrounding his sentencing, ███ would live in Williamsburg, Virginia with another sister. The family's plan is for ███ to return to Morgantown with Mr. Costianes as soon he either knows he is not receiving a sentence or when he returns from serving any sentence.

When ███ was with Mr. Costianes, her care needs were significant. ███████████████████
███████████████████████████████████████████████████████████████████████████
█

In an email to counsel, Mr. Costianes explained what day-to-day care for ███ entails. Mr. *See* Exhibit D, Care email. ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████ We will forward

───────────────────────────────

[2] Counsel has requested update records to show Mr. Costianes' continued attendance at his medication management appointments. Counsel will forward them once we receive them.

September 13, 2024
Page 7
*United States v. Elias Costianes*, JKB-21-458
Filed Under Seal

under separate cover a CD with some brief videos Mr. Costianes and ███ recorded. *See* Exhibit E, Videos of ███. Among the reasons Mr. Costianes currently works as a ride share driver and pizza delivery driver is that those jobs give him the flexibility to care for ███ while taking shifts when the home health aide is able to assist.

Reflecting on his caregiving, Mr. Costianes writes:

> This experience in taking care of my sister has been without question the hardest thing I have ever done in my life but without a doubt it has been the most rewarding and fulfilling thing I have ever done. For the first year I had no help or relief whatsoever, and as bad as her condition is, it is much better than she was the day I went to get her from the hospital in Baltimore December 23rd 2021. She is in good spirits and has a zest for life. ███ and I have been very close my entire life as she is 25 years older than me she always looked at me as her little sweetie maybe the child that she never had.

*Id.*

And though ███ is with family, she is not receiving the same care from her sisters. Everyone agrees that it is best for ███ to be with Mr. Costianes; and Mr. Costianes visits her every time he can. As ███ condition worsens, her needs will only increase. Mr. Costianes is the only family member willing to provide in-home care for ███ through the end of life.

Mr. Costianes' arrest was the event that brought all the competing pressures in his life to a head. He faced felony charges, significant caregiving responsibilities, and was dealing with untreated mental illness. Under intense pressure, Mr. Costianes chose to take steps to get his life back under control. He has abstained from drugs; he has continued lawful employment and has paid down much of his outstanding debt; and most importantly, he began to treat his ███████ ███████. As explained below, each of these facts directly touches on several of the § 3553(a) factors and all weigh in favor of probation.

### 3. Probation is the substantively reasonable sentence for Mr. Costianes.

At Mr. Costianes' first sentencing, the Court largely, but not wholly, rested its sentencing decision on the need for general deterrence; general considerations of the seriousness of distributing drugs, albeit "arguably casually"; and promoting respect for the law. Sent. Trans. at 33-39. The Court also found the factors of public safety, specific deterrence, and Mr. Costianes' history and characteristics weighed in his favor. *Id.* In other words, the Court found that the most individualized sentencing factors weighed in Mr. Costianes' favor, while the more systemic sentencing factors such as promoting respect for the law and general deterrence called for incarceration. *Id.*

September 13, 2024
Page 8
*United States v. Elias Costianes*, JKB-21-458
Filed Under Seal

However, with the new information discussed above—which now puts Mr. Costianes' drug abuse, mental health, and caregiving duties, in full context—a reweighing of the factors supports heavier reliance on the individualized sentencing considerations.

First, to the extent the Court expressed misgivings about whether Mr. Costianes had turned the corner into living a fully law-abiding life, the Court has two helpful data points. Mr. Costianes has now been on pretrial supervision for three years—subject to the same conditions that will apply when he is on probation. During those three years he has maintained his sobriety, sought and obtained lawful employment, and otherwise done all that was asked of him by his supervising officer.

Further, Mr. Costianes has started mental health treatment. ███████████████████
█████████████████████████████ With proper treatment of ███████████████, Mr. Costianes is far less likely to abuse drugs in the future and engage in associated risky behavior and poor decision making.

In terms of general deterrence, it is well-recognized "in virtually every deterrence study to date, [that] the perceived certainty of punishment [is] more important than the perceived severity." Ray Paternoster, *How Much Do We Really Know About Criminal Deterrence?*, 100 J. Crim. L. & Criminology 765, 817 (2010) ; *Five Things About Deterrence*, Nat'l Institute of Justice (Jun. 5, 2016).  Indeed, severity increases are "seldom if ever crime preventatives." Michael Tonry, I, 34 Crime & Just. 1, 29 (2006). Here, that logic applies even more so.

Mr. Costianes' offense of conviction, possession of a firearm by a user or addiction of a controlled substance, is largely committed by individuals with no criminal history at all, or at least no felony convictions. The prospect of a felony conviction for individuals is far more of an effective deterrent for violators of § 922(g)(3) than for violators of § 922(g)(1), who by definition already have felony convictions.

Finally, although the Court found that the sentencing factor of treatment can be effectively addressed either in the community or in the Bureau of Prisons, that finding should be reevaluated in light of Mr. Costianes' decision to start mental health treatment. Currently, Mr. Costianes is receiving effective mental health treatment in the community. Continuity of that care in Bureau of Prisons is not assured.

In a Department of Justice Office of the Inspector General report regarding the use of restrictive housing within the Bureau of Prisons ("OIG report"), the Inspector General made several stark observations regarding the overall provision of mental health services to inmates in federal prisons. *See* Review of the Federal Bureau of Prisons' Use of Restrictive Housing for Inmates with Mental Illness, U.S. Department of Justice, Office of the Inspector General (July 2017).

September 13, 2024
Page 9
*United States v. Elias Costianes*, JKB-21-458
Filed Under Seal

First, the report found that the BOP does not even always know which inmates need mental health services. The report authors wrote, "BOP data showed that, as of 2015, only 3 percent of the BOP's sentenced inmate population was being treated regularly for mental illness. Yet, the BOP's FY 2016 Performance Budget Congressional Submission cited an internal BOP study, which suggested that approximately 19 percent of federal inmates had a history of mental illness. Moreover, a 2006 Bureau of Justice Statistics report concluded that 45 percent of federal inmates had symptoms or a recent history of mental illness." *Id.* at ii, *see also id.* at 34–36.

Second, the report noted that since the BOP "adopted a new mental health policy in 2014, increasing the standards of care for inmates with mental illness . . . the total number of inmates who receive regular mental health treatment decreased by approximately 30 percent. . .." *Id.* at iii. In other words, though the BOP recognized a decade ago it was not properly providing mental health care to inmates, its performance in this area has worsened as of 2017.

Third and finally, the BOP has a significant staffing shortage in mental health jobs. The report found that, "Based on our review, it appears that mental health staff may have reduced the number of inmates . . . who must receive regular mental health treatment because they did not have the necessary staffing resources to meet the policy's increased treatment standards. Indeed, we found that, as of October 2015, the BOP had filled only 57 percent of its authorized full-time Psychiatrist positions nationwide and that it had significant staffing issues with regard to Psychologist positions as well." *Id.,* at iii, *see also id.* at 41–46. Given the well-documented, post-pandemic staffing shortages in BOP, the Court should have little confidence that a federal prison system that is hemorrhaging staff will have adequate staffed mental health departments. *See* Glenn Thrush, *Short on Staff, Prisons Enlist Teachers and Case Managers as Guards*, N.Y. Times (May 1, 2023). *See also* Ryan Tarinelli, *Federal prison director tells senators about staffing 'crisis'*, Roll Call (Feb. 28, 2024).

Though Dr. DeRight's report documenting Mr. Costianes' mental health history would hopefully address the first of these issues, it will do little to help with the latter two. In short, in order "to provide [Mr. Costianes] with needed . . . medical care . . . in the most effective manner," the Court should impose a probationary sentence and permit Mr. Costianes to work with his current providers and the United States Probation Office for his long-term treatment. See 18 U.S.C. § 3553(a)(2)(D).

September 13, 2024
Page 10
*United States v. Elias Costianes*, JKB-21-458
Filed Under Seal

**IV.    Conclusion**

For these reasons, and those developed at the September 24, 2024, sentencing hearing, Mr. Costianes asks the Court to impose a sentence of probation. We thank the Court for its attention this matter.

Sincerely,

/s/

Andrew Szekely
Paresh Patel
Assistant Federal Public Defenders