IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| v. | * | **CRIMINAL NO. JKB-21-0458** |
| **ELIAS NICK COSTIANES, JR.,** | * | |
| **Defendant.** | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM AND ORDER

This case comes before the Court on limited remand, and the Fourth Circuit retains jurisdiction of the appeal. (ECF No. 169.) Further, the United States has filed Consent Motion to Dismiss Indictment with Prejudice, which seeks to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 48 ("Rule 48 Motion"). (ECF No. 170.) The Court will direct further briefing.

**I. Background**

As the Fourth Circuit explained in its order remanding the case, Elias Costianes

> was the subject of federal investigation based on his presence at the United States Capitol Building on January 6, 2021. After federal authorities executed a search warrant in February 2021 at his home in Maryland seeking evidence related to his role in the events at the Capitol Building on January 6, Costianes pled guilty to possession of a firearm and ammunition by an unlawful user of any controlled substance under 18 U.S.C. § 922(g)(3)[.]

(ECF No. 169 at 1.) On September 24, 2024, this Court sentenced Costianes to one year and one day incarceration. (*Id.* at 1–2.) And, on January 20, 2025, President Trump issued a proclamation "grant[ing] a full, complete and unconditional pardon to . . . individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021" (the "January 20 Pardon"). (*Id.* at 2 (citing Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 20,

2025).)

Costianes initially docketed his appeal before the Fourth Circuit on October 15, 2024, prior to the issuance of the January 20 Pardon. (Doc. 1, *United States v. Costianes*, No. 24-4543 (4th Cir. Oct. 15, 2024).) On February 12, 2025—the day Costianes surrendered to commence service of his sentence—Costianes filed (in the Court of Appeals) an Emergency Motion for Injunction to the U.S. Marshals to Release Appellant, Stay the Sentence, and Expedite this Motion Pending Appeal ("Emergency Motion"), which sought Costianes' immediate release. (Doc. 17, No. 24-4543.) That motion contended that "[b]ecause the case in the Maryland District Court arose from and relied upon the search warrant for January 6th," the January 20 Pardon applies to Costianes. (*Id.*) The Government filed a response "agree[ing] that the President pardoned [Costianes]" and that he "should be immediately released from custody in connection with this case, his sentence should be stayed, and this Court should resolve his motion on an expedited basis." (Doc. 20, No. 24-4543.)

On February 27, 2025, the Fourth Circuit set a briefing schedule, and asked the parties to respond to three questions:

> 1. Separate and apart from the issue of mootness, whether this Court has jurisdiction to consider, and whether it is prudent for this Court to consider, Costianes' motion in the absence of any ruling by the district court on the [January 20 Pardon] and in absence of a motion to vacate Costianes' sentence.
>
> 2. Whether this Court has authority to review and interpret the [January 20 Pardon].
>
> 3. Whether the [January 20 Pardon] applies in this case as a conviction "related to events that occurred at or near the United States Capitol on January 6, 2021."

(Doc. 23, No. 24-4543.)

Rather than respond to those questions, the parties filed a Joint Motion to Vacate Conviction and Remand for Dismissal on March 12, 2025 ("Motion to Vacate"). (Doc. 27, No. 24-4543.) In the Motion to Vacate, the parties "jointly move[d] to vacate the defendant's

conviction and remand this case to the district court to dismiss the indictment with prejudice pursuant to Federal Rule of Criminal Procedure 48(a)." (*Id.*) The parties cited the January 20 Pardon and explained that, "[a]fter further considering this case in light of the Court's questions, the government has determined that the more efficient and prudent course—and the one most consistent with President Trump's instructions—is to move to vacate Mr. Costianes's conviction and dismiss the indictment under Rule 48(a)." (*Id.*)

In a March 25, 2025 order, the Fourth Circuit explained that it had received the Motion to Vacate and that, "to consider the relief sought in this latest motion and in the prior emergency motion, which remains outstanding," it was "order[ing] the parties to provide the supplemental responses as requested in the court's order of February 27, 2025." (Doc. 30, No. 24-4543.) The parties filed responses on March 31, 2025. (Docs. 33–34, No. 24-4543.)

After the parties filed their responses, the Fourth Circuit remanded the case to this Court. In remanding the case, the Fourth Circuit explained:

> In our view, both pending motions[1] require a determination of whether the pardon applies to Costianes' conviction. Given that the district court did not address that issue, and "mindful that we are a court of review, not of first view," *Lovelace v. Lee*, 472 F.3d 174, 203 (4th Cir. 2006) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)), we remand to the district court for the limited purpose of considering the pending motions, and any other related motions the parties wish to make concerning the impact of the pardon on Costianes' conviction. This court will retain jurisdiction of the appeal.

(ECF No. 169 at 3.)

## II. Scope of the Remand

Given the limited directive from the Fourth Circuit, the Court will be careful not to exceed the scope of its authority. *See United States v. Manning*, No. 21-4471, 2024 WL 701785, at *2 (4th Cir. Feb. 21, 2024) ("When the appellate court's remand is limited . . . the district court only

---

[1] The Court understands this to refer to the Emergency Motion and the Motion to Vacate.

3

has authority to reopen the case pursuant to the scope of the appellate court's instructions."); *see also Riddick v. Herlock*, 547 F. App'x 318, 319 (4th Cir. 2013) (returning a case to a district court to make certain factual findings where "the district court acted beyond the scope of our limited remand"); *United States v. Campbell*, 168 F.3d 263, 265 (6th Cir. 1999) ("Limited remands explicitly outline the issues to be addressed by the district court and create a narrow framework within which the district court must operate.").

The Fourth Circuit explicitly circumscribed this Court's authority on remand. It issued a limited remand, and specifically delineated the question this Court was to resolve: whether the January 20 Pardon applies to Costianes. (ECF No. 169 at 3.) It retained jurisdiction of the appeal. (*Id.*) The Fourth Circuit explained that the Court could "consider[] the pending motions, and any other related motions the parties wish to make *concerning the impact of the pardon on Costianes' conviction*." (*Id.*) Resolving the pending Rule 48 Motion does not fall within the scope of the remand. The Court of course recognizes that the Motion to Vacate asked the Fourth Circuit to "to vacate the defendant's conviction and remand this case to the district court to dismiss the indictment with prejudice pursuant to Federal Rule of Criminal Procedure 48(a)." (Doc. 27, No. 24-4543.) However, this Court is not in a position to assess whether the Fourth Circuit should "vacate the defendant's conviction" separate and apart from the question of whether the January 20 Pardon applies. Further, given that the Fourth Circuit stated that it was retaining jurisdiction of the appeal and that it explicitly asked that this Court address the applicability of the January 20 Pardon to Costianes' conviction, the Court does not understand its authority to extend to the Rule 48 Motion, which—if granted—would likely have the effect of mooting the appeal.

The Government recognizes this possibility, explaining that "[i]f the Court nonetheless believes that this motion does not fall within the scope of the Fourth Circuit's remand order, the

United States requests that it provide an indicative ruling under [Federal Rule of Criminal Procedure] 37." (ECF No. 170 at 2 n.1.) That Rule provides that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Thus, the Court will consider—but not finally resolve—the Rule 48 Motion.

### III. January 20 Pardon

With respect to whether the January 20 Pardon applies to Costianes' conviction, neither party has provided this Court with any briefing on the question.[2] Given the Fourth Circuit's directive that this Court consider the impact of the January 20 Pardon on Costianes' conviction, this is a question the Court must take up. *See Riddick*, 547 F. App'x at 319 (returning a case to a district court to make factual findings where "the district court acted beyond the scope of our limited remand"). The parties will be directed to provide additional briefing. Such briefing must address whether the January 20 Pardon applies to Costianes' conviction in this Court, without reference to the Rule 48 Motion. As explained in more detail below, the Court concludes for purposes of this remand that such Motion raises a substantial question.

### IV. Rule 48 Motion

Turning to the Rule 48 Motion, pursuant to Federal Rule of Criminal Procedure 48(a), "[t]he government may, with leave of court, dismiss an indictment, information, or complaint." The Court concludes that it may address the Rule 48 Motion, pursuant to the limited framework

---

[2] The Court notes that other courts have not extended the Pardon's reach beyond events that at or near the United States Capitol on January 6, 2021. *See United States v. Kelley*, Crim. No. 22-CR-118-TAV-JEM-1, 2025 WL 757583 (E.D. Tenn. Mar. 10, 2025); *United States v. Wilson*, Crim. No. 23-CR-427-1 (DLF), 2025 WL 1009047 (D.D.C. Mar. 13, 2025).

5

of Rule 37. The Court concludes that the Rule 48 Motion raises a substantial issue.

As an initial matter, the Court can consider a motion pursuant to Rule 48 even where a defendant has pleaded guilty and where the case is on direct appeal. *See Rice v. Rivera*, 617 F.3d 802, 808–09 (4th Cir. 2010); *see also* 3B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 802 (4th ed.) ("Rule 48(a) continues to apply even after conviction and sentencing while the case is on direct appeal, and the same standard applies to a government request for dismissal at that stage as applies if the request came prior to trial.").

As for the substance of a Rule 48 request, "[a]lthough the Government must obtain leave of court, the court's discretion in considering the Government's motion to dismiss is limited." *United States v. Graves*, 846 F. App'x 170, 173 (4th Cir. 2021); *see also United States v. Goodson*, 204 F.3d 508, 512 (4th Cir. 2000) ("While the rule confers discretion on the district court to deny the government's motion to dismiss a charging document, this discretion is not broad."). However, the Court must not simply act as a rubber stamp in this context, which would render the "leave of court" requirement in Rule 48 superfluous. The Fourth Circuit has explained that "[c]ourts have held that by including the phrase 'leave of court' in Rule 48(a), 'the Supreme Court intended to clothe the federal courts with a discretion broad enough to protect the public interest in the fair administration of criminal justice.'" *United States v. Manbeck*, 744 F.2d 360, 371 (4th Cir. 1984) (quoting *United States v. Cowan*, 524 F.2d 504, 512 (5th Cir. 1975)).

The Court's discretion is circumscribed in the Rule 48 context "because the discretion granted by Rule 48(a) implicates the constitutional doctrine of separation of powers." *Goodson*, 204 F.3d at 512; *see also id.* at 512–13 ("Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or . . . whether to dismiss a proceeding once brought." (quoting *Newman v. United*

*States*, 382 F.2d 479, 480 (D.C. Cir. 1967)). Thus, "Rule 48(a) asks courts to strike a delicate balance—deferring to executive discretion where appropriate but protecting against executive overreach in limited circumstances." *United States v. Adams*, Crim. No. 24-556 (DEH), 2025 WL 978572, at *14 (S.D.N.Y. Apr. 2, 2025).

A district court "must grant the [Rule 48(a)] motion absent a finding of bad faith or disservice to the public interest." *United States v. Perate*, 719 F.2d 706, 710 (4th Cir. 1983) (citing *Rinaldi v. United States*, 434 U.S. 22, 30 (1977)). The Fourth Circuit has analyzed these factors as one and the same: as the Fourth Circuit has explained, "the court must grant the government's Rule 48(a) motion unless the court concludes that to grant it would be clearly contrary to manifest public interest, determined by whether the prosecutor's motion to dismiss was made in bad faith." *Goodson*, 204 F.3d at 512; *see also United States v. Smith*, 55 F.3d 157, 159 (4th Cir. 1995) ("The disposition of a government's motion to dismiss an indictment should be decided by determining whether the prosecutor acted in good faith at the time he moved for dismissal. A motion that is not motivated by bad faith is not clearly contrary to manifest public interest, and it must be granted.").

Rule 48 motions have not been frequently litigated in this Circuit. However, the Fourth Circuit has explained that "[t]he disservice to the public interest must be found, if at all, in the motive of the prosecutor. Examples of disservice to the public interest include the prosecutor's acceptance of a bribe, personal dislike of the victim, and dissatisfaction with the jury impaneled." *Smith*, 55 F.3d at 158–59. And although "[t]he principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging . . . . the Rule has also been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly

contrary to the public interest." *Rinaldi*, 434 U.S. at 29 n.15 (citations omitted).

Furthermore, "Rule 48(a) requires that the government set forth the basis for its motion to dismiss." *Adams*, 2025 WL 978572, at *15 (collecting cases); *United States v. Salinas*, 693 F.2d 348, 352 (5th Cir. 1982) ("Although the burden of proof is not on the prosecutor to prove that dismissal is in the public interest, the prosecutor is under an obligation to supply sufficient reasons—reasons that constitute more than a mere conclusory interest." (citation and internal quotation marks omitted)). "The reason for requiring the government to state its actual reasons for seeking dismissal is simple: 'Since the court must exercise sound judicial discretion in considering a request for dismissal, it must have sufficient factual information supporting the recommendation.'" *Adams*, 2025 WL 978572, at *16 (quoting Wright & Miller, *supra*, § 802).

Here, the Government offers only the following as its reasoning for seeking a Rule 48(a) dismissal:

> Here, irrespective of whether the President's proclamation granting "a full, complete and unconditional pardon to . . . individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021," *see* Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 20, 2025), applies to Mr. Costanies's [sic] conviction, the Department of Justice's actions in light of that presidential order provide no basis for a finding of bad faith.

(ECF No. 170 at 3.) Thus, the Court understands the Government's basis for the Rule 48 Motion to be its interpretation of the January 20 Pardon and its conclusion that it applies to Costianes, regardless of whether this Court (or an appellate court) agrees that such conclusion is legally correct.

However, the Government has taken inconsistent positions with respect to the January 20 Pardon. While the Government has taken the position that it has in this case in other cases (*i.e.*, that the Pardon applies to defendants on charges relating to conduct that did not occur at or near the United States Capitol on January 6, 2021), *see, e.g., United States v. Jeremy Brown*, Crim. No.

8

21-00348, ECF No. 376 (M.D. Fla. Mar. 25, 2025), it has also taken the position that the Pardon does not apply to others.

For instance, in *United States v. Kelley*, the defendant filed a motion to vacate his conviction on the basis that the January 20 Pardon applied to offenses relating to a conspiracy to murder employees of the United States in December 2022. Crim No. 22-00118-TAV-JEM, ECF Nos. 93–94 (E.D. Tenn. Jan. 27, 2025). The Government opposed that motion, explaining that:

> The defendant's conduct in this case was unrelated in both time and place to the events that occurred at or near the United States Capitol on January 6, 2021. The crimes for which an East Tennessee jury convicted the defendant did not occur at or near the United States Capitol on January 6, 2021. They occurred entirely within the Eastern District of Tennessee nearly two years later. By the plain language of the Proclamation, dismissal of this case is not warranted. Other courts have reached the same conclusion for conduct separate in time or place from the events at or near the United States Capitol on January 6, 2021. *See, e.g., United States v. Taranto*, D.D.C. Case No. 1:23-cr-229, Minute Order, Feb. 12, 2025; *United States v. Wilson*, D.D.C. Case No. 1:23-cr-427, Minute Orders, Feb. 3 & 7, 2025.

*United States v. Kelley*, Crim. No. 22-00118-TAV-JEM, ECF No. 95 (E.D. Tenn. Feb. 18, 2025).

In the *Taranto* case, cited by the Government in the *Kelley* case, the Government took the following position:

> Taranto's actions in June 2023 in Washington, D.C., were not offenses occurring at the U.S. Capitol on January 6, 2021. Taranto's possession of guns, large-capacity magazines, and hundreds of rounds of ammunition, alarming statements about a "detonator" in his car, and purportedly driving to a federal facility, all occurring in June 2023, and not at the United States Capitol, are wholly unrelated to the pardon for and dismissal of charges related to January 6, 2021 at the United States Capitol. They are not subject to dismissal by motion of the defendant or by order of the Court on this basis.

*United States v. Taranto*, Crim. No. 23-00229-CJN, ECF No. 101 (D.D.C. Feb. 11, 2025).

In the *Wilson* case, also cited by the Government in *Kelley*, the Government initially stated that the Pardon did not cover certain firearms convictions, only to change its position a couple weeks later. On February 6, 2025, the Government explained that "[t]he convictions for 18 U.S.C. § 922(g) & 924(a)(2) (possession of a firearm by a prohibited person) and 18 U.S.C. § 5841,

9

5861(d), and 5871 (possession of an unregistered firearm) . . . did not occur at the United States Capitol on January 6, 2021, and thus, by the plain language of the certificate, the pardon does not extend to these convictions." *United States v. Wilson*, Crim. No. 23-00427-DLF, ECF No. 103 (D.D.C. Feb. 6, 2025). The Government then reversed course and, on February 25, 2025, explained that "[t]he basis of these convictions were firearms recovered pursuant to a search warrant executed at the defendant's residence in Kentucky, based on his conduct on January 6, 2021, at the United States Capitol," and that "the Presidential Pardon includes a pardon for the firearm convictions to which the defendant pled, similar to other defendants in which the government has made comparable motions." *United States v. Wilson*, Crim. No. 23-00427-DLF, ECF No. 108 (D.D.C. Feb. 25, 2025).

This is not meant to be an exhaustive list, but rather to provide examples of the inconsistency of the Government's position in relation to the January 20 Pardon. And, although the Court is not aware of any Fourth Circuit precedent addressing inconsistent positions with respect to a Rule 48 bad faith inquiry, in other contexts, "misleading and inconsistent assertions sometimes reveal bad faith." *United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 200 (4th Cir. 2022) (citation and internal quotation marks omitted); *see also id.* ("So at best for [appellant], the statements were merely misleading instead of both misleading and inconsistent, which is not exactly a neon sign of good-faith lawyering.").

Perhaps there is some good faith reason for these seemingly inconsistent positions. And perhaps taking such inconsistent positions does not rise to the level of "bad faith" meriting denial of a Rule 48 motion. Further, to the extent that this Court rules that the January 20 Pardon does not apply to Costianes' conviction, it is not clear whether the Government's differing interpretation of the Pardon could form the basis of a Rule 48 motion. As noted above, the Court cannot simply

act as a rubber stamp, and—although the Court's discretion is tightly limited in this context—the "leave of court" requirement in Rule 48(a) provides the Court with "a discretion broad enough to protect the public interest in the fair administration of criminal justice." *Manbeck*, 744 F.2d at 371 (citation and internal quotation marks omitted).

Given the foregoing, the Court concludes pursuant to Federal Rule of Criminal Procedure 37(a)(3) that the Rule 48 Motion raises a substantial question.

## V.  Conclusion

Given the foregoing, it is ORDERED that the parties are DIRECTED to file briefing concerning the impact of the January 20, 2025 Pardon on Costianes' conviction by April 21, 2025.

DATED this __10__ day of April, 2025.

BY THE COURT:

James K. Bredar
United States District Judge