IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ELIAS NICK COSTIANES, JR.,<br>    Defendant. | No. 1:21-cr-00458-JKB |

**UNITED STATES OF AMERICA'S RESPONSE TO BRIEFING ORDER**

The United States hereby responds to the Court's order directing that we "file briefing concerning the impact of the [President's] January 20, 2025 Pardon on [Mr. Elias] Costianes' conviction." ECF No. 171 at 11. The parties agree that the pardon applies to the conviction. It therefore should be vacated.

I.   **Background Facts**

As the Court knows, on January 20, 2025, President Donald J. Trump issued a presidential proclamation granting "a full, complete and unconditional pardon" to "all . . . individuals convicted of offenses related to events that occurred at or near the United States Capitol on January 6, 2021." Proclamation No. 10887, 90 Fed. Reg. 8331, 8331 (Jan. 20, 2025). The proclamation excluded fourteen people from the pardon's scope—Mr. Costianes is not one of them. *Id.* The pardon's purpose, the President said, is to end a "grave national injustice" and begin a "process of national reconciliation." *Id.* To ensure the full and expeditious implementation of the

1

proclamation, the President delegated to the Attorney General the responsibility to "administer and effectuate the immediate issuance of certificates of pardon to all individuals described [in the pardon]." *Id.* Mr. Costianes received a certificate of pardon from the Department of Justice informing him that he had been "pardoned by the Presidential Proclamation of January 20, 2025," and stating that the pardon covered his "convictions for offenses related to events that occurred at or near the United States Capitol on January 6, 2021." Exhibit A. The President also directed the Attorney General to "pursue dismissal with prejudice to the government of all pending indictments against individuals for their conduct" falling under the pardon's scope. 90 Fed. Reg. at 8331. Based on that directive, the United States moved to dismiss the indictment against Mr. Costianes then pending in the U.S. District Court for the District of Columbia. *See* United States' Unopposed Motion to Dismiss Indictment with Prejudice Pursuant to Federal Rule of Criminal Procedure 48(a), *United States v. Costianes*, No. 1:21-cr-00180-RJL (D.D.C. Jan. 21, 2025), ECF No. 92. And the United States has since moved to dismiss the underlying indictment in this case with prejudice. *See* ECF No. 170.

Mr. Costianes stands convicted of one count of unlawfully possessing firearms and ammunition, in violation of 18 U.S.C. § 922(g)(3). ECF No. 139 at 1. He came to the attention of law enforcement when the FBI received a tip on January 8, 2021, that he had entered the U.S. Capitol two days earlier. ECF No. 1-1 at 3, ¶ 5. After

reviewing video evidence corroborating that he had done so, federal agents obtained an arrest warrant for him, as well as warrants to search his residence in Maryland, his vehicle, and his cellphone "for evidence, fruits, and instrumentalities" of his conduct at the Capitol on January 6, 2021. *Id.* at 3–4, ¶ 6.

FBI agents executed what they called "the Capitol Riot Warrants" on February 12, 2021, at Mr. Costianes's Maryland residence. ECF No. 1-1 at 4, ¶ 7. The agents apprehended Mr. Costianes on the living-room couch, and he told them that they would "find firearms that belonged to him in the basement." *Id.* Sure enough, they did. *Id.* at 4, ¶ 8. Mr. Costianes told the agents that the firearms were stored "in cases behind a safe," and the agents found them there "unloaded," along with ammunition. ECF No. 33 at 3. The agents took the "firearms and ammunition" from the basement with Mr. Costianes's consent. ECF No. 1-1 at 4, ¶ 8. Elsewhere in the residence, the agents found evidence indicating that Mr. Costianes was illegally using "synthetic testosterone." *Id.* at 5, ¶¶ 9–10. The agents also discovered marijuana in his vehicle. *Id.* at 5–6, ¶¶ 11, 13. Based on this evidence, the agents sought additional warrants to "draw [his] blood to search for evidence of his use of controlled substances," *id.* at 6, ¶ 14, and seize any evidence on his cellphone and related iCloud account of his possession of "firearms, ammunition, or controlled substances," *id.* at 9, ¶ 18.

To execute the blood draw warrant, the agents met Mr. Costianes at a medical facility to get a "sample of [his] blood." ECF No. 1-1 at 6–7, ¶ 14. By this point, Mr.

Costianes was being prosecuted in the federal district court in Washington, D.C., for his conduct at the U.S. Capitol on January 6, 2021. *Id.* The blood draw revealed that "THC—the active chemical ingredient in marijuana—was present in [his] blood." *Id.* at 7, ¶ 14. The agents then searched Mr. Costianes's cellphone and found evidence suggesting that he had been involved with synthetic testosterone and marijuana for some time. *Id.* at 7–8, ¶¶ 15–16. Based on this evidence, the agents concluded that he was an "unlawful use[r] of controlled substances," which "rendered the firearms and ammunition [in his basement] contraband" under 18 U.S.C. § 922(g)(3). *Id.* at 9, ¶ 18. This led to Mr. Costianes's prosecution in this case.

A federal grand jury issued a superseding indictment charging Mr. Costianes with various offenses, including his February 12, 2021 possession of firearms and ammunition in his Maryland home. *See* ECF No. 34. Mr. Costianes agreed to plead guilty to that firearm offense in exchange for the United States dismissing the other charges. ECF No. 83 at 1, ¶ 1; 6, ¶ 10. He pleaded guilty to the firearm offense, ECF No. 82; the United States dismissed the other charges, ECF No. 139 at 1; and this Court sentenced him to one year and one day in prison, ECF No. 139 at 2.

Mr. Costianes timely appealed the resulting judgment of conviction. *See* ECF No. 143. Fifteen weeks later, President Trump issued the pardon that the Department has concluded applies to Mr. Costianes's conviction. *See* 90 Fed. Reg. at 8331. The Department announced this conclusion within one month of the pardon. *See* United

States of America's Response to Appellant's Emergency Motion for Relief, *United States v. Costianes*, No. 24-4543 (4th Cir. Feb. 19, 2025).

## II.   Analysis

The President's proclamation provided, as relevant, that the pardon reaches any conviction or charged conduct that is "*related to* the events that occurred at or near the United States Capitol on January 6, 2021." 90 Fed. Reg. at 8331 (emphasis added). That language is plainly not limited solely to offenses that occurred *at* the U.S. Capitol on January 6, 2021. The words "relate[d] to" in their "normal sense" have a "broad common-sense meaning" that potentially reaches anything having "a connection with" the related-to events. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990). So when construing "language including the phrase 'relat[ed] to,'" courts "typically read the relevant text expansively." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018). How expansively depends on the "context." *Dubin v. United States*, 599 U.S. 110, 119 (2023) ("That the phrase ['relate to'] refers to a relationship or nexus of some kind is clear. Yet the kind of relationship required, its nature and strength, will be informed by context." (internal citation omitted)).

The relevant context—as provided in the proclamation itself—is President Trump's intent that the pardon will end a "grave national injustice" and begin a "process of national reconciliation." 90 Fed. Reg. at 8331; *see also The Buena Ventura*, 175 U.S. 384, 394 (1899) (declining to give a cramped construction to a

presidential proclamation on the ground that the President "never intended it"). As reflected in the Department's actions concerning Mr. Costanies, the proclamation's remedial purpose will not be achieved if people subjected to January 6-related investigations continue to be prosecuted for certain in-home offenses that would not have been discovered but for those investigations. Whether an offense falls within the scope of this remedial purpose—and thus is "related to" the events at the Capitol on January 6—involves a fact-intensive and case-specific inquiry.

    Here, the Department has determined that there is no sound reason to believe that Mr. Costianes's possession of firearms and ammunition in his basement, while being an unlawful user of controlled substances, would have been discovered in any way other than as the unexpected byproduct of executing the "Capitol Riot Warrants" on his home. For example, there was no victim or witness who feasibly would have reported this offense to the authorities, nor any investigation unrelated to the events of January 6, 2021, that might have otherwise uncovered it.[1] What is more, the agents investigating Mr. Costianes concluded that his drug use "was sufficiently consistent, prolonged, and close in time to his gun possession" to qualify him as an "unlawful user" for purposes of § 922(g)(3), *United States v. Hasson*, 26 F.4th 610, 616 (4th

---

[1] Mr. Costianes's cellphone contained "photographs or videos of firearms," including a couple years-old examples that displayed people possessing firearms in the vicinity of his home. ECF No. 1-1 at 8–9, ¶ 17. It is not clear whether that conduct was illegal. None of it appears to have resulted in any law-enforcement interest.

Cir. 2022), only after searching and seizing evidence from his cellphone and related iCloud account, which the agents would not have done but for what they had seen while executing the "Capitol Riot Warrants." *See* ECF No. 1-1 at 7–9, ¶¶ 15–18.[2] In sum, the Department has concluded that were it not for Mr. Costianes's involvement in "the events that occurred at or near the United States Capitol on January 6, 2021," 90 Fed. Reg. at 8331, his § 922(g)(3) offense would not have come to light, let alone been prosecuted. His conviction is sufficiently "related to" those events to fall within the pardon's scope as described in the presidential proclamation's text.

In reviewing the Department's reading of the President's pardon, "deference should be accorded to an executive agency's interpretation of an executive order it is charged with administering," including in the context of a pardon. *Andrews v. Warden*, 958 F.3d 1072, 1078 (11th Cir. 2020). As the Eleventh Circuit has observed, "deference to an agency's interpretation is sensible in this context, where a court cannot even review a pardon that a recipient has not presented to it." *Id.* (citing *United States v. Wilson*, 32 U.S. 150, 161–63 (1833)). And as the Fourth Circuit has recognized, the Judicial Branch's role with respect to pardons is quite limited. *See Rosemond*, 92 F.4th at 525–26. Because the Department's position on the pardon is reasonable, it warrants deference. *Andrews*, 958 F.3d at 1078.

---

[2] Although acquiring and possessing drugs may have involved conduct outside the home and been discoverable in other ways, Mr. Costanies was not convicted of any offense directly covering that conduct.

This Court has intimated that the Department's reading of the pardon has been "inconsistent" in other cases and thus might be in "bad faith" here. ECF No. 171 at 8–10. But any inadvertent deviation from the Department's consistent reading of the pardon has been rectified. In any event, a mere change in litigation position is not proof of "bad faith" in the context of Federal Rule of Criminal Procedure 48(a).

With respect to the Department's consistency in how we have read the pardon, consider the first example the Court cites, *see* ECF No. 171 at 6, which is *United States v. Kelley*, No. 3:22-cr-00118-TAV-JEM (E.D. Tenn. Feb. 18, 2025), ECF No. 95. There, the United States explained that the defendant's convictions for conspiring to murder federal employees, soliciting a crime of violence, and influencing a federal officer by threat did not fall within the pardon's scope because they were "entirely independent" of, and thus "unrelated" to, the events at the U.S. Capitol on January 6, 2021. *Id.* at 1–3. That position was consistent with our position here because, by threatening federal officers and soliciting others to murder them, the defendant committed offenses with an effect outside the home that were discovered through means unrelated to any investigation into his actions on January 6. *See* Affidavit in Support of Criminal Complaint and Arrest Warrants at 4, ¶ 11, *United States v. Kelley*, No. 3:22-cr-00118-TAV-JEM (E.D. Tenn. Dec. 16, 2022), ECF No. 3. The United States has never maintained that the pardon's "related to" language is so expansive as to reach such offenses.

8

The same analysis applies to the United States's decision in *United States v. Taranto*, No. 1:23-cr-00229-CJN (D.D.C. Jan. 25, 2025), ECF No. 96, not to dismiss the defendant's June 2023 offenses. There, the record indicates that the defendant broadcast some of his June 2023 offenses live over a public YouTube channel and that law enforcement discovered his other offenses when he was apprehended after a confrontation with U.S. Secret Service agents. *See* Government's Memorandum in Support of Pre-Trial Detention at 1–3, *United States v. Taranto*, 1:23-cr-00229-CJN (D.D.C. July 5, 2023), ECF No. 8. These simply are not cases where the offenses are so connected to the events of January 6 that the United States can confidently say that they would not have been discovered and prosecuted but for the investigation into the defendant's conduct at the U.S. Capitol on January 6, 2021.

The only example of a facial inconsistency this Court has identified is *United States v. Wilson*, No. 1:23-cr-00427-DLF (D.D.C. Feb. 6, 2025), ECF No. 103, where the United States initially said that the pardon did not apply to offenses that "did not occur at the United States Capitol on January 6, 2021." *Id.* at 2. The United States, however, promptly corrected its reading of the pardon because it had overlooked that the pardon also applies to convictions and charged conduct "related to" the "events" at that time and place. Indeed, when the United States corrected its position in that case, the prosecutor explained that she had "received further clarity" on the pardon's scope in part by learning of cases where prosecutors had taken the position reflected

9

here. *See* United States' Response to the Court's February 24, 2025 Order Regarding Defendant's Motion for Relief Pursuant to 28 U.S.C. § 2255 at 2–3, *United States v. Wilson*, No. 1:23-cr-00427-DLF (D.D.C. Feb. 25, 2025), ECF No. 108. And though not cited by this Court, a similar correction has occurred in at least one other case. *See* United States' Supplemental Statement of Non-Opposition to Appeal Pursuant to Rule 9(b), *United States v. Martin*, No. 24-7203 (9th Cir. Feb. 27, 2025).

Even if the Department's position has changed, it would not be a sign of bad faith but rather of a change in considered judgment. The definition of "bad faith" in the context of Criminal Rule 48(a) motions has been purposefully "circumscribed" to cover only instances where a prosecutor is acting unethically. *Rice v. Rivera*, 617 F.3d 802, 811 (4th Cir. 2010) (per curiam) (citing examples like acting out of animus or accepting a bribe). Applying any broader of a definition would risk encroaching on the Executive's "exclusive authority and absolute discretion to decide whether to prosecute a case." *United States v. Nixon*, 418 U.S. 683, 693 (1974).

Finally, if the Court concludes that the Department has correctly or even just reasonably construed the pardon, it may simply apply the pardon to Mr. Costianes's offense of conviction. *See Andrews*, 958 F.3d at 1078. But there is an even more straightforward path available: The Court should grant (or indicate that it will grant) the United States's pending Criminal Rule 48(a) motion to dismiss the indictment with prejudice. *See* ECF No. 170.

### III. Conclusion

Vacatur of the conviction and dismissal of the indictment are the impact that President Trump's pardon should have on Mr. Costianes's case. The parties agree on this. And it would raise concerning and unnecessary separation-of-powers issues if a court read the President's pardon differently than the Executive Branch or denied the United States leave to dismiss this non-final prosecution under Rule 48(a). For these reasons, the United States respectfully asks the Court to adopt the parties' joint position that the President pardoned Mr. Costianes of his offense of conviction.

          Respectfully submitted,

          KELLY O. HAYES
          United States Attorney

          /s/ David C. Bornstein
          Assistant United States Attorney
          Chief, Appellate Division
          United States Attorney's Office
          36 South Charles Street, 4th Floor
          Baltimore, Maryland 21201
          (410) 209-4800

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 24, 2025, I electronically filed the above response in this case and thereby electronically served a copy of it on Mr. Elias Nick Costianes, Jr., through his counsel of record, who are ECF Filers.

/s/ David C. Bornstein
Assistant United States Attorney
